# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| MIDSTREAM TRANSPORTATION COMPANY AND HARTFORD FIRE INSURANCE COMPANY | CIVIL ACTION NO. 23-0063 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| INTERSTATE DIESEL, LLC | MAGISTRATE JUDGE AYO |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 38) filed by Defendants Interstate Diesel, LLC ("Interstate") and Colony Insurance Company. Defendants seek dismissal of Plaintiffs' Louisiana state law claims on the ground that there is no factual support for such claims. Plaintiffs Midstream Transportation Company ("Midstream") and Hartford Fire Insurance Company oppose the Motion for Summary Judgment. See Record Document 40. Defendants filed a reply. See Record Document 41. For the reasons set forth below, Defendants' Motion for Summary Judgment is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the theft of Midstream's 2013 Peterbilt 389 tractor ("the tractor") from Interstate's repair shop ("the repair shop") located at 113 Frontage Road in Rayne, Louisiana. On January 19, 2022, Midstream dropped the tractor off at the repair shop to undergo repairs. The repair shop is owned by Aaron Youngs ("Youngs"). This was not the first tractor that Midstream had deposited with Interstate for repairs. There were no problems or difficulties during the previous business transactions between Midstream and Interstate.

Interstate's repair shop, also referred to as a garage at times, is located right next to the Rayne exit off of Interstate 10 east bound, at the rear of a truck stop and casino parking lot.  Numerous tractors and trailers are parked in the truck stop parking lot at various times.  Interstate does not own the parking area around its repair shop.  In his deposition, Youngs explained that once a truck is dropped off, it is parked in the parking lot until there is time to pull the truck into the garage to diagnose the problem(s).  See Record Document 38-5 at 18.  The repair shop only holds four trucks at a time.  See id. After repairs are complete, Interstate contacts the owner to advise that the truck is ready for pickup and to inform the owner of the amount due.  See id. at 21.  Youngs stated that at this time, the trucks go outside during business hours and then are put back in the locked repair shop until payment has been made.  See id. at 21-22.  Youngs testified:

> Well, we would put it outside of the shop while we were working, and then put it back in the shop until we were paid for it because we don't leave a truck outside that is not paid for because somebody could just come pick up their truck if they have a spare key.  So I take it out, and put it back in at nighttime.

Id.

Again, Midstream's tractor was dropped off on January 19, 2022.  Youngs does not recall when exactly the Midstream repairs were completed.  See id. at 20.  His best recollection is "early February."  Id.  Youngs also could not recall when Midstream was first notified that the repairs were complete or who made such notification.  See id. at 21. The summary judgment record does contain an invoice dated February 24, 2022 and marked completed on February 25, 2022.  See Record Document 38-3 at 9-10.  The invoice reflects credit card payment in the amount of $3,167.64.  See id. Youngs testified,

2

"As is our standard practice the Tractor was then placed on the lot [on February 24, 2022] in front of my repair shop." Id. at 2.

On March 2, 2022, Midstream notified Interstate that it was coming from Texas to pick up the tractor. Youngs declared in his affidavit that he went to get the keys from the lockbox and then found the truck was gone. See id. at 2. He stated in his deposition that it was the "Midstream guys" that first noticed the truck was missing. Record Document 40-2 at 30. Youngs explained:

> They came in and got the keys from me. I said, the truck is out there in the parking lot. They went out there and said, hey, where is the truck?

Id. According to Youngs, he then called the Acadia Parish Sheriff's Office and reported the theft. See Record Document 38-3 at 2. Deputy Davey Anglin ("Deputy Anglin") with the Acadia Parish Sheriff's Office responded to investigate. See id. Youngs went on to state that his video camera surveillance system showed the theft occurred on February 24, 2022 from approximately 9:55 to 10:10 p.m. See id. Youngs shared the video surveillance with Deputy Anglin. See id. Deputy Anglin recorded the video surveillance on his body camera as the two watched it together. See id.[1]

Gary Gray ("Gray") and Bobby Daw ("Daw") were the two Midstream employees sent from Texas to pick up the tractor from Interstate on March 2, 2022. Both Gray and Daw testified in their depositions that upon arrival at Interstate, they went inside and were immediately told that the tractor had been stolen. See Record Document 40-4 at 17 and Record Document 40-5 at 19-21. This was the first time Interstate informed anyone associated with Midstream of the theft. Additionally, while Youngs testified that the keys

---

[1] The body camera footage was submitted as a Manual Attachment and can be found in the record at Record Document 38-4.

were in the lockbox and that he gave the keys to Gray and Daw, both Midstream employees testified in their depositions that neither of them were given the tractor keys to take back to Texas. See id. at 23 and Record Document 40-5 at 32.

Interstate has an elaborate camera system which views the area of the parking lot where the tractor was parked on the night of February 24, 2022, when the theft occurred. Interstate's check of the video surveillance showed a white Dually truck pulling up and parking next to the tractor at approximately 9:55 p.m. Two guys get out of the Dually. One guy gets into Midstream's tractor. The whole process takes approximately fifteen minutes, as both the Dually and the tractor leave around 10:10 p.m.[2]

Plaintiffs allege that their damages were caused by Interstate's failure to secure the tractor before leaving it unattended; failure to ensure that the keys were securely held; failure to ensure that outsiders did not have access to the tractor and/or the keys to the tractor; failure to uphold the duty of safekeeping owed as a depositary under Louisiana Civil Code Article 2930 ("Article 2930"); failure to uphold the duty to return a movable to the depositor upon demand pursuant to Article 2930; and failure to fulfill the obligations under Article 2930 to care for the deposited tractor with diligence and prudence. See Record Document 23 at ¶ 20. The parties have stipulated that, at the time of the subject loss, the fair market value of the tractor was $93,260.36. See Record Document 37. Defendants now move for summary judgment seeking dismissal of Plaintiffs' Louisiana state law claims. See Record Document 38.

---

[2] The body camera video in which the theft is discussed by Youngs and Deputy Anglin is submitted in lieu of the original camera video, due to the fact that both copies of the original camera video have been declared corrupted and are unavailable for viewing.

**LAW AND ANALYSIS**

**I.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). "Summary judgment is proper 'where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact.'" Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir. 1990) (quoting Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir.1988)).

If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## II. Deposit under Louisiana Law.

Here, Plaintiffs allege that Interstate was a compensated, also known as onerous, depositary of Midstream's tractor. Interstate does not dispute that the delivery of the tractor to Interstate was a compensated depositary. See Kirshner v. Johnson, 521 So. 2d 697, 700 (La. Ct. App. 1988) ("An automobile repairer is a compensated depositary."). Thus, Louisiana law on deposit governs the instant matter.

"A deposit is a contract by which a person, the depositor, delivers a movable thing to another person, the depositary, for safekeeping under the obligation of returning it to the depositor upon demand." La. Civ. Code Ann. Art. 2926. Contracts of deposit may be either onerous or gratuitous. See La. Civ. Code Ann. Art. 2928. "When the deposit is onerous, the depositary is bound to fulfill his obligations with *diligence and prudence*." La. Civ. Code Ann. art. 2930 (emphasis added). In all instances, "the depositary is liable for the loss that the depositor sustains as a result of the depositary's failure to perform [its] obligations." Id. "A depositary is not an insurer of the deposit, but he owes a duty to exercise reasonable care to take precautions against reasonabl[y] foreseeable damage to the deposited property." Nat'l Auto. Ins. Co. v. Champ's New Orleans Collision Ctr., LLC, 2006-1144 (La. App. 4 Cir. 2/28/07), 954 So. 2d 197, 199.

Louisiana "jurisprudence has determined that [the] obligation of safekeeping is more rigorously enforced against one who is a compensated depositary." Alpha Alpha, Inc. v. Southland Aviation, 96-928 (La. App. 3 Cir. 7/9/97), 697 So. 2d 1364, 1370. "Once it is established that a compensated deposit exists and that there is a loss of or damage to the property while deposited, a presumption is raised that the loss resulted from lack of due care on the depositary's part and the burden is then on the depositary to exonerate

6

himself from fault." Id. See also Comment, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825 (1975); Op.Atty.Gen. No. 81-1238, April 23, 1982.

III. **Analysis.**

It is uncontested that Midstream deposited the tractor with Interstate and that the tractor was not returned to Midstream because it was stolen by third parties. Thus, there is a presumption in this case that the theft of the tractor resulted from Interstate's lack of due care. The burden is now on Interstate to exonerate itself from fault.

Interstate concedes that it bears the burden of proof under both Article 2930 and in the instant motions. See Record Document 38-2 at 6. Yet, it submits that it was not negligent because the keys were not left in the unattended tractor and it did everything it could under the circumstances to secure the tractor. See id. at 6-8. Youngs testified that he had an extensive video surveillance system; kept the keys in his lockbox; and locked up the trucks. See Record Document 38-5 at 48-49. He explained that he let his customers know when their trucks were ready and encouraged them to "pick [their] truck[s] up as soon as [they could]" because the trucks were "sitting in a truck stop parking lot." Id. at 49. He testified that there were no more precautions he could "really do to somebody else's parking lot." Id. In sum, Interstate argues Midstream was aware of the risk of theft in leaving the truck in a public area for so long and there is no evidence to support that Interstate left the keys in the tractor or assisted in any way with an unanticipated criminal act of third parties. See id. at 9.

Here, the Court finds that Defendants have failed to meet their burden of proving that the loss undisputably was not caused by any negligence and/or fault on the part of Interstate. Defendants submit that the security footage is "available incontrovertible

evidence" demonstrating that the theft occurred over approximately fifteen minutes, which does not support Plaintiffs' theory that the thieves had access to the keys kept in the lockbox.   Record Document 38-2 at 6-7.  The security footage is available to the Court only through Deputy Anglin's body camera video.  The Court finds that the body camera footage is not incontrovertible, as it is hard to see any detail on such footage.  Youngs maintained in his deposition that the tractor must have been broken into because it was locked; yet, he admitted that it was not apparent from the video if a window to the tractor was broken or if a "Slim Jim" was used.  Record Document 40-2 at 37-38.  Moreover, the deposition testimony of Gray and Daw conflicts with Youngs' assertion that he gave them the keys to the tractor.  There is a material issue of fact regarding whether the keys were left in the tractor and/or whether the tractor was left unlocked.  The jury will have to assess the credibility of witnesses and weigh evidence to make this determination, which directly bears on the diligence, prudence, and exercise of reasonable care on the part of Interstate.

There is also conflicting evidence on the secureness of the lockbox.  It appears that it was left unlocked all day in the office with little to no measure to ensure that no one accessed keys without permission.  See Record Document 40-2 at 27.  Moreover, in light of previous thefts,[3] the trier of fact will be free to consider whether Interstate should have – pursuant to its obligations under Article 2930 – provided additional security measures to ensure that the vehicles in its possession are safeguarded from theft.  The summary judgment record contains evidence that it took Interstate six days to realize that Midstream's tractor had been stolen from the parking lot.  In light of these facts and

---

[3] Youngs testified in his deposition that prior to the Midstream tractor being stolen, two other trucks had been stolen from Interstate. See Record Document 40-2 at 46.

circumstances, this Court believes the determination of diligence, prudence, and the exercise of reasonable care is more appropriately determined by the jury at trial, not the Court at the summary judgment stage. Defendants' Motion for Summary Judgment must be **DENIED**.

## CONCLUSION

Genuine disputes of material fact exist, such that the determination of Interstate's obligations of diligence, prudence, and the exercise of reasonable care must be determined by the trier of fact, not this Court. Accordingly, Defendants' Motion for Summary Judgment (Record Document 38) seeking dismissal of Plaintiffs' Louisiana state law claims is **DENIED**. This matter shall proceed to jury trial.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 4th day of December, 2024.

_____
United States District Judge